IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| CHRISTOPHER WADE PAYNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 122-039 |
| | ) | |
| WARDEN PHILBIN; WARDEN HARVEY; | ) | |
| UNIT MANAGER MR. HARMON; | ) | |
| SGT. ESSER; SGT. CRITE; CO-ONE | ) | |
| MR. HILL; CO-TWO MS. WADE; UNIT | ) | |
| MANAGER BROWN; COUNSELORS LLC; | ) | |
| COUNSELOR MR. WEATHERFORD; and | ) | |
| COUNSELOR MR. GRAY, | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Telfair State Prison ("TSP") in Helena, Georgia, is proceeding *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983. Because he is proceeding IFP, Plaintiff's amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

I. **BACKGROUND**

Plaintiff names the following Defendants: (1) Warden Philbin, (2) Warden Harvey, (3) Unit Manager Harmon, (4) Sergeant Esser, (5) Sergeant Crite, (6) Co-One Officer Hill, (7) Co-Two Officer Wade, (8) Unit Manager Brown, (9) Counselors LLC, (10) Counselor Weatherford, and (11) Counselor Gray. (Doc. no. 13, p. 1.)

Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Plaintiff, a prisoner within the Georgia Department of Corrections ("GDC"), was housed in the Specialized Mental Health Treatment Units ("SMHTU") Tier II Program for Level III Mental Health inmates at Augusta State Medical Prison. (Id. at 5.) On October 29, 2019, a fellow inmate assaulted Plaintiff. (Id.) On the date of the incident, Defendant Hill escorted Plaintiff to the shower on the lower level of Unit 11B. (Id.) When Defendant Hill went back upstairs to supervise inmates in the upper-level showers, Inmate Berrien approached Plaintiff's shower with a net bag and a homemade shank stating, "Payne, cracker I'm gonna rape and kill you the first chance I get." (Id. at 5-6.) Plaintiff alleges that Berrien is "Head of the Blood Gang Members." (Id. at 14.)

After Plaintiff finished showering, he requested to speak with Defendant Weatherford. (Id. at 6.) Plaintiff was escorted to the 11C building to meet with Defendant Weatherford and Defendant Gray. (Id.) Plaintiff filed two PREA statements detailing the threats Berrien made to Plaintiff in the shower. (Id.) Defendants Brown and Crite did not take immediate action to separate Plaintiff and Berrien into different buildings. (Id.) A few days after Plaintiff filed the PREA statements, Plaintiff witnessed Defendant Hill escort Berrien to Defendant Brown's office in 11C. (Id.) About thirty minutes later, Berrien returned to the 11B dormitory with a copy of Plaintiff's statement form. (Id. at 6-7.) Berrien began yelling loudly as he read Plaintiff's statement aloud in front of other inmates in the dormitory. (Id. at 7.) Berrien told Plaintiff, "Chris Payne, you are a rat." (Id.)

On November 4, 2019, Defendant Hill escorted Berrien to the lower-level shower and did not lock the shower. (Id.) Then, Defendant Hill came to Plaintiff's cell and informed

2

him Defendant Brown wanted to see him.  (Id.)  Defendant Hill placed Plaintiff in cuffs and escorted him to 11C.  (Id.)  On the way to Defendant Brown's office in 11C, Plaintiff saw two other inmates talking to Berrien in the unlocked shower.  (Id.)  When Plaintiff arrived at Defendant Brown's office, Defendant Brown handed him a statement form and asked him to write a statement regarding what happened on October 29, 2019.  (Id.)  Plaintiff informed Defendant Brown that he already wrote two statements regarding the incident, also stating, "You know that because you just gave Michael Berrien a copy."  (Id.)  Defendant Brown laughed and stated, "Well write it again . . . I need one for my file."  (Id.)

After Plaintiff complied with Defendant Brown's request, Defendant Hill began to escort Plaintiff back to the 11B dormitory.  (Id.)  Halfway to the dormitory, Plaintiff thought of Berrien's unlocked shower and turned around to report Defendant Hill's failure to lock Berrien's shower to Defendant Brown.  (Id.)  Defendant Hill asked Plaintiff what he was doing, and Plaintiff responded that he needed to ask Defendant Brown about his electric cord for his breathing machine.  (Id.)  Defendant Hill assured Plaintiff he would help him, but Plaintiff said, "Yeah right," and walked back to Defendant Brown's office in 11C.  (Id.)

When Plaintiff arrived at Defendant Brown's office, Defendant Brown stood in the hallway to talk with Plaintiff.  (Id. at 8-9.)  As they spoke, Plaintiff suddenly heard Defendant Wade yelling, "No!" as Berrien ran full-speed towards Plaintiff wielding a foot-long homemade knife.  (Id. at 9.)  As Plaintiff tried to turn the opposite direction, Berrien grabbed Plaintiff's jumpsuit collar and Plaintiff ran into Defendant Brown's office.  (Id.)  While in Defendant Brown's office, Plaintiff attempted to block several jabs to the head.  (Id.)  Plaintiff was eventually able to grab the knife with his left hand, resulting in a severe cut.  (Id.)  Defendant Wade and Defendant Hill grabbed the knife from Berrien.  (Id.)

3

Plaintiff requested to be escorted to the medical unit for medical attention, but Defendant Brown instructed Defendant Hill back to his cell in 11B. (Id. at 10.) Defendant escorted Plaintiff back to his cell and refused to give Plaintiff medical treatment for his injuries. (Id.) After Plaintiff returned to his cell, he wrote two grievances regarding Berrien's attack. (Id.) When the officers still did not attempt to separate Plaintiff and Berrien in different units, Plaintiff visited Defendant Weatherford to file his grievances and requested that Defendant Weatherford speak to Defendant Harvey about the PREA incidents and the recent attack. (Id. at 10-11.) Plaintiff requested a move to 12A lockdown for his safety. (Id. at 11.)

A few days later, the Cert Team arrived at Plaintiff's cell and escorted him to the medical unit. (Id.) After Plaintiff's visit to the medical unit, he was taken to 12A cell in the lockdown unit. (Id.) Defendant Brown delivered Plaintiff's property to 12A cell, but he did not bring Plaintiff's electric cord or breathing machine for his COPD disease. (Id.) Defendant Brown spoke to lockdown security who informed him that Plaintiff could no longer have the electric cord or breathing machine, even though the items were issued to him by the Alston Medical Director at Augusta State Medical Prison. (Id.) Plaintiff continued to stay in 12A lockdown for the next six months. (Id.)

On April 27, 2020, Defendant Harmon came to Plaintiff's cell in 12A and instructed him to pack his belongings to move back to 11B. (Id. at 12.) Plaintiff informed Defendant Harmon that Defendants Harvey and Philbin told Plaintiff he would not be moved back to 11B until Berrien was transferred. (Id.) Defendant Harmon responded, "Pack your s**t. Philbin and Harvey don't run this prison." (Id.) Plaintiff complied with Defendant Harmon's orders and Defendants Harmon and Esser escorted him back to 11B. (Id.) On the

4

way back to 11B, Defendant Hamon instructed Plaintiff to stop walking as he made a call to the 11B unit. (Id.) About thirty seconds later, they resumed their walk to 11B. (Id.)

As soon as they arrived at 11B's front gate, Defendant Crite and five other inmates, including Berrien's brother, were standing on the other side of the gate. (Id.) Plaintiff alleges all five inmates were Bloods gang members, including Berrien's brother whose gang name was "Wacko." (Id. at 12-13.) Before Defendant Crite opened the gate, Plaintiff requested his handcuffs to be taken off since he had obtained Ultimate Level of the SMHTU Privilege list. (Id. at 13.) Defendant Harmon denied Plaintiff's request and Defendant Crite laughed. (Id.) Defendant Crite opened the 11B gate and Berrien's brother "Wacko" stabbed Plaintiff three times in his head, once in his right forearm, once in his right fist, and once in his right hand. (Id.) Plaintiff stopped the knife with his right hand and Defendant Esser helped take the knife from Walco while Defendant Harmon "sat there and just smiled." (Id.)

Plaintiff alleges Berrien watched the attack from the 11C office window. (Id.) At Plaintiff's request, he was taken to the medical unit where Physician's Assistant Willie examined his injuries. (Id. at 14.) Willie noted that Plaintiff's tendon in his hand was cut in half and his head wounds required staples. (Id.) Plaintiff was sent to the hospital for further treatment to his severed tendon. (Id.) Afterwards, Plaintiff filed another PREA grievance. (Id.)

For relief, Plaintiff requests an immediate grant of parole, or in the alternative, monetary damages in the amount of $2,000,000. (Id. at 15.)

## II.  DISCUSSION

### A.  Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or

5

fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  A claim is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."  Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'"  Id. (quoting Twombly, 550 U.S. at 555, 557).  In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"  Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney.  Erickson v. Pardus, 551 U.S.

89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### B. Plaintiff fails to State a Claim Against Defendants Philbin and Harvey

Plaintiff fails to state a claim against Defendants Philbin and Harvey. The only instance in which Defendant Philbin or Defendant Harvey are directly mentioned within Plaintiff's complaint is when Plaintiff asserts to Defendant Harmon that Defendants Philbin and Harvey allegedly informed Plaintiff he would not return to 11B until Berrien was transferred. (Doc. no. 1, p. 12.) When Plaintiff moved back to 11B in violation of the wardens' alleged assurances to Plaintiff, Plaintiff was subsequently attacked by inmates following his move back to 11B. (Id. at 9.) However, Defendant Harmon's statement to Plaintiff, "Philbin and Harvey don't run this prison," insinuates that neither Philbin nor Harvey were directly or indirectly involved in the decision to move Plaintiff back to 11B. (Id.)

In the absence of Defendant Philbin or Defendant Harvey's direct involvement in events described within Plaintiff's complaint, Defendants Philbin and Harvey cannot be held liable merely in light of his supervisory position. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013). Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of respondeat superior. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on respondeat superior

7

theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold Defendant White or Defendant Harvey liable, Plaintiff must demonstrate that he (1) actually participated in the alleged constitutional violation, or (2) there is a causal connection between the individual's actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Plaintiff has failed to allege facts that establish Defendants Philbin and Harvey were present for, or participated in, a constitutional violation. Therefore, Plaintiff must allege a causal connection between Defendant Philbin and/or Defendant Harvey and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation).

The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671. A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to

8

stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff also fails to allege facts sufficient to support the necessary causal connection. Plaintiff has not alleged (1) a history of widespread abuse regarding inmate-on-inmate violence at Augusta State Medical Prison, (2) an improper custom or policy put in place by Warden Philbin or Deputy Warden Harvey regarding the same, or (3) an inference Warden Philbin or Deputy Warden Harvey directed others to act, or knew they would act, unlawfully. In sum, Plaintiff has not shown Warden Philbin or Deputy Warden Harvey actually participated in an alleged constitutional violation; nor has he drawn the necessary causal connection to any alleged constitutional violation.

The Eleventh Circuit has held a district court properly dismisses a defendant where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendant with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.") Therefore, Plaintiff fails to state a claim upon which relief can be granted against Defendant Philbin or Defendant Harvey.

### C. Plaintiff Fails to State a Valid Failure to Protect Claim

A prison inmate has a constitutional right to be protected from violence and from physical assault by other inmates. Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984) (*per curiam*); Gullatte v. Potts, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981).[1] When officials become aware of a threat to an inmate's health and safety, the Eighth Amendment

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

9

imposes a duty to provide reasonable protection. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (*per curiam*). However, "[t]his does not mean that the constitutional rights of inmates are violated every time a prisoner is injured. It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials." Gullatte, 654 F.2d at 1012. "[T]here must be at least some allegation of a conscious or callous indifference to a prisoner's rights" that would raise the tort to the level of a constitutional violation in order to state a section 1983 cause of action against prison officials for cruel and unusual punishment. Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982) (citations omitted).

"Although 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners,' not every instance of inmate on inmate violence 'translates into constitutional liability for prison officials responsible for the victim's safety.'" Terry v. Bailey, 376 F. App'x 894, 895 (11th Cir. 2010) (*per curiam*) (citing Farmer, 511 U.S. at 833-34). To establish an Eighth Amendment claim, a prisoner "must allege facts sufficient to show (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal quotations omitted). These three elements are evaluated in part by an objective standard and in part by a subjective standard. See Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019).

> As the Eleventh Circuit explained,
>
> When examining the first element—a substantial risk of serious harm—the court uses an objective standard. The second element—the defendant's deliberate indifference to that risk—has two components: one subjective and one objective. To satisfy the subjective component, a plaintiff must produce evidence that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm. To satisfy the objective component,

> a plaintiff must produce evidence that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner.

Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (internal citations and quotations omitted).

"[A]n excessive risk of inmate-on-inmate violence at jail creates a substantial risk of serious harm; occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, but confinement in a prison where violence and terror reign is actionable." Harrison v. Culliver, 746 F.3d 1288, 1299 (11th Cir. 2014). However, "[a] plaintiff . . . must show more than 'a generalized awareness of risk.'" Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1101 (11th Cir. 2014). In order to show more than a general risk of violence, a plaintiff must provide prison officials with "further information enabling them to conclude that the risk was substantial and not merely possible." Marbury v. Warden, 936 F.3d 1227, 1236 (11th Cir. 2019). When specific gang related threats are made on an inmate's life and the threats are explicitly reported to prison officials, a substantial risk of harm is created that would trigger a prison official's duty to act. See Rodriguez v. Sec'y for the Dep't of Corr., 508 F.3d 611, 617 n.12 (11th Cir. 2007).

Throughout Plaintiff's complaint, Plaintiff identifies Inmate Berrien as a threat to his safety. (Doc. no. 1, pp. 5-13.) Although Plaintiff reported Berrien's death threat to prison officials before his first attack, the attack took place outside of Unit 11B while Plaintiff stood in the hallway speaking with Defendant Brown in 11C, and while prison officials attempted to stop Berrien. (Id. at 9.) Therefore, the first attack was not a circumstance of Defendants Brown, Hill, or Wade's failure to separate the inmates into separate units. When prison officials responded by placing Plaintiff in a lockdown unit for his safety, they did not

11

demonstrate a deliberate indifference to Berrien's assault upon Plaintiff or any substantial risk of harm resulting therefrom. (Id. at 11.)

When he was forced to move back to Unit 11B six months later, a group of gang members, including Berrien's brother perpetrated a second assault. (Id. at 13.) At no point before the second assault, did Plaintiff notify Defendants Harmon, Esser, or Crite of an explicit threat from Berrien, the gang members or Berrien's brother before his return to Unit 11B, nor did he express any generalized fear of violence from anyone on Unit 11B. (Id.) Upon arrival at the Unit 11B gate, Plaintiff merely requested to have his handcuffs removed. (Id.)

In addition to Plaintiff's failure to inform officials of a specific threat from any inmate on Unit 11B, Plaintiff also failed to connect the second assault to Berrien in any way, other than his brother's involvement in the second attack and an alleged "Bloods" affiliation. (Id.) In fact, Plaintiff states that Berrien was in the 11C office at the time of the attack and not within reach of Plaintiff. (Id.) In the absence of any specific threat made to Plaintiff that would create a substantial risk of harm to trigger prison officials' duty to protect, Plaintiff has failed to allege facts that suggest a facility-wide organized attack upon him. Thus, Plaintiff has failed to show he was at a substantial risk of harm, or that the prison officials acted with deliberate indifference to any substantial risk of harm. Since Plaintiff has failed to establish the first two elements of an Eighth Amendment claim, we need not address the third element of causation.

### D. Official Capacity Monetary Damages

Plaintiff is suing Defendants in their individual and official capacities. However, the Eleventh Amendment bars official capacity claims against state prison officials for money

12

damages.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Therefore, Plaintiff's official capacity claims against all Defendants for monetary relief fail as a matter of law and should be dismissed.

### III.     CONCLUSION

For the reasons set forth above, Plaintiff's complaint fails to state a claim upon which relief can be granted.  Therefore, the Court **REPORTS** and **RECOMMENDS** the case be **DISMISSED** for failure to state a claim upon which relief can be granted and that this civil action be **CLOSED**.

SO REPORTED AND RECOMMENDED this 22nd day of July, 2022, at Augusta, Georgia.

*[signature]*

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA